UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KELLY AEROSPACE THERMAL
SYSTEMS, LLC,

       Plaintiff,

v.

ABF FREIGHT SYSTEM, INC.,

       Defendant.
                                          /

Case No. 15-12227

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT [11] AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [26]**

Plaintiff brings this action pursuant to the Carmack Amendment, 49 U.S.C. § 14706 *et seq.*, to recover losses incurred after Plaintiff's aircraft parts were damaged during shipment by Defendant carrier. This matter comes before the Court on the parties' cross-motions for partial summary judgment on the issue of whether the parties agreed to limit Defendant's liability. For the reasons stated herein, the Court GRANTS Defendant's motion and DENIES Plaintiff's motion.

**I.    Facts**

In January 2014, the parties entered into an agreement to ship Plaintiff's aircraft parts from Ohio to California. (Dkt. 25, at ¶¶ 5-12.) Plaintiff alleges Defendant carrier accepted delivery of the crate with Plaintiff's aircraft parts in perfect condition for shipment, and Defendant took responsibility for loading and transporting the crate to California. (*Id.* at ¶ 12.) On January 31, 2014, Defendant contacted Plaintiff to advise that the crate and aircraft parts had been damaged during transit and had arrived in damaged condition. (*Id.* at ¶ 15.)

Plaintiff filed the instant action to recover damages pursuant to the Carmack Amendment, 49 U.S.C. § 14706. (Dkt. 25.) Defendant now moves for partial summary judgment on the issue of limited liability, arguing that the parties agreed to limit Defendant's liability to a maximum of $25.00 per pound.[1] Plaintiff disagrees, seeking judgment that the default of full liability under the Carmack Amendment applies.

## II. Standard

It is well established that summary judgment under Federal Rule of Civil Procedure 56 is proper when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *U.S. S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (internal citation omitted). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## III. Analysis

Plaintiff brings one claim against Defendant for damages pursuant to §14706 of the Carmack Amendment. The Carmack Amendment creates a "national scheme of carrier liability for loss or damage to goods transported in interstate commerce." *Exel, Inc. v. S. Refrigerated Transp., Inc.*, 807 F.3d 140, 148 (6th Cir. 2015). The default under the Carmack Amendment is full liability on the carrier for damage to its cargo, "unless the

---

[1] Defendant argues its liability is limited to either $25.00 or $0.10 per pound and does not ask the Court to determine which level of liability applies. (Dkt. 11, at 21.)

2

shipper has agreed to some limitation in writing." *Id.* Subsection (c)(1)(A) of §14706 provides a "very narrow" exception which permits a carrier to limit its liability. *Id.* at 150.

To successfully limit its liability under § 14706(c)(1)(A), many courts, including the Sixth Circuit, have held that a carrier must: (1) provide a shipper with the carrier's tariff if the shipper requests it;[2] (2) provide the shipper with a fair opportunity to choose between two or more levels of liability; (3) obtain the shipper's written agreement as to its choice of liability; and (4) issue a receipt or bill of lading prior to moving the shipment. *See, e.g. Exel*, 807 F.3d at 151. The burden is on the carrier to "prove that it complies with these requirements." *Exel*, 807 F.3d at 151. Although there have been changes to the amendment since this test was first set forth, the Sixth Circuit recently clarified that a carrier must still "provide the shipper with both reasonable notice of any options that would limit the liability of the carrier and the opportunity to obtain the information about those options." *Id.* at 152 (citing *Toledo Ticket*, 133 F.3d at 442).

Defendant argues it satisfied all four requirements and is entitled to judgment on the issue of limited liability.[3] Defendant supports its argument by pointing to the individualized

---

[2]The first element of this test previously required the shipper to "maintain approved tariff rates with the [Interstate Commerce Commission]." *Toledo Ticket Co. v. Roadway Exp., Inc.*, 133 F.3d 439, 442 (6th Cir. 1998). The Sixth Circuit has recognized, however, that the first prong is "arguably no longer viable" after Congress eliminated the requirement for non-household goods carriers to file rates with the ICC. *Exel*, 807 F.3d at 151-52. Other circuits have similarly recognized that under the latest version of the statute "a carrier is now required to provide a shipper with the carrier's tariff if the shipper requests it, instead of the shipper filing its tariff with the now-defunct ICC." *Sassy Doll Creations, Inc. v. Watkins Motor Lines, Inc.*, 331 F.3d 834, 841 (11th Cir. 2003). *See also OneBeacon Ins. Co. v. Haas Indus., Inc.*, 634 F.3d 1092, 1100 (9th Cir. 2011) (same).

[3]Alternatively, Defendant argues Plaintiff agreed to limit its liability under § 14101(b)(1). (Dkt. 28, at 8-10.) Because the Court concludes Defendant has demonstrated that it limited its liability under § 14706(c)(1)(A), it need not address this alternative argument.

3

tariffs (or "pricing agreements") created for Plaintiff in January 2013, under which Defendant agreed to deeply discounted shipping prices in exchange for Plaintiff's agreement to limit Defendant's liability. Defendant argues the terms and conditions set forth in the 2013 pricing agreements, along with the specific communications regarding the 2014 shipment at issue, satisfy each of the four factors necessary to limit its liability.

Plaintiff argues Defendant's motion should be denied and partial summary judgment should be granted in its favor because it claims it was not a party to the 2013 pricing agreements and thus they do not apply to the 2014 shipment. Plaintiff argues Defendant therefore cannot satisfy the four requirements necessary to limit its liability and the default of full liability applies. Alternatively, even if the terms of the 2013 agreements applied, Plaintiff argues Defendant still failed to satisfy the four-step test. The Court first addresses whether the terms of the 2013 pricing agreements applied to the shipment at issue.

**A. 2013 Pricing Agreements**

Plaintiff is Kelly Aerospace Thermal Systems, LLC ("Plaintiff" or "KATS"), a limited liability company formed Delaware.[4] (Dkt. 26-2.) According to Plaintiff, Defendant has confused Plaintiff with another Kelly Aerospace entity. (Dkt. 26, at 13-19.) Kelly Aerospace Power Systems ("KAPS") is an Alabama corporation. (Dkt. 26-3.) Plaintiff claims it is a legally separate and distinct entity from KAPS and that it is not a subsidiary, affiliate or division of KAPS. (Dkt. 26, at 17.) Plaintiff argues it cannot be bound by any agreements or terms of prior shipments between Defendant and KAPS because contracts are generally not enforceable against a non-party. *See, e.g.*, *Great W. Cas. Co. v. Flandrich*, 605 F.

---

[4] After Defendant filed its motion for partial summary judgment, Plaintiff substituted in as the correct party, replacing Kelly Aerospace Energy Systems. (Dkt. 22.)

4

Supp. 2d 955, 964-65 (S.D. Ohio 2009) ("it is a fundamental rule of contracts that a contract cannot bind a party who has not accepted the contract").

Moreover, Plaintiff contends the 2013 pricing agreements were only for a one-time shipment with KAPS, not a "continued [s]hipping relationship." (Dkt. 26, at 14.) For support, Plaintiff submits an affidavit from Todd Bates, its representative for the 2014 shipment, swearing that he "investigated and confirmed with the Kelly Aerospace Companies that none of the Kelly Aerospace Companies ever entered into ... any continuing or longstanding 'individualized pricing agreements' with ABF." (Dkt. 31, at ¶ 8). It is well established, however, that such conclusory and self-serving affidavits without factual support in the record, do not create a triable issue of fact. *See, e.g.*, *Toma v. Gen. Revenue Corp.*, No. 07-13018, 2008 WL 302378, at *3 (E.D. Mich. Feb. 1, 2008) (citing *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 354 (7th Cir. 2002) ("It is well settled that conclusory allegations and self-serving affidavits, without support in the record, do not create a triable issue of fact.")).

Defendant responds that the 2013 pricing agreements set forth the terms and conditions for subsequent shipments by all "Kelly Aerospace" companies and therefore all "Kelly Aerospace" entities—including Plaintiff—are bound by the terms and conditions of such agreements. (Dkt. 28, at 5-8.) Having reviewed the evidence, the Court concludes that the 2013 pricing agreements applied to the shipment at issue.

First, the 2013 pricing agreements and corresponding emails reference only "Kelly Aerospace," not a more specific entity. (Dkt. 11-3; Dkt. 11-4.) Although KAPS may have been the first entity to utilize the terms of the 2013 agreements, there is no indication from the agreements or corresponding communications that they were limited to shipments by

5

KAPS. Rather, Defendant's communications regarding the individualized pricing agreements were with a representative at "www.kellyaerospace.com," which is the internet address used by Plaintiff, KAPS, and several other Kelly Aerospace entities. (Dkt. 28-2.)

In addition, and importantly, when Plaintiff filled out the online shipment request for the 2014 shipment at issue, it identified itself merely as "Kelly Aerospace" (not "Kelly Aerospace Thermal Systems") and received the 80% discount set forth in the 2013 pricing agreements. (*See, e.g.*, Dkt. 11-8; Dkt. 11-9; Dkt. 11-10.) Of note, the rate quotations for the 2014 shipment included the same discount tariff series number, "ABF646," as listed in the 2013 agreements.[5] (Dkt. 11-5; Dkt. 11-9.) Plaintiff further instructed Defendant to use the same Alabama billing address used by KAPS and other Kelly Aerospace entities. (Dkt. 11-10; Dkt. 28-3.) Based on the above facts, the Court concludes the 2013 pricing agreements applied to the shipment at issue.[6]

---

[5]Plaintiff argues the quotations did not initially use the Kelly Aerospace account number (Dkt. 29); Defendant explains that the initial account number was inadvertently used and was the number associated with an entity that had acquired Kelly Aerospace entities. (Dkt. 30.) When the mistake was recognized, it was changed to the Kelly Aerospace account number. (*Id.*) Regardless of the account number, each quote utilized the same tariff series number that appeared in the 2013 agreements. (Dkt. 11-3; Dkt. 11-4.)

[6]Even if the Court agreed that the 2013 pricing agreements were between Defendant and KAPS only, there are many exceptions to the rule that contracts are not enforceable against non-parties that could be applicable here. *See, e.g.*, *Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 631 (2009) ("a contract [may] be enforced by or against nonparties ... through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel.'"). For example, under the "direct benefits theory" of estoppel, a non-signatory that "receives a direct benefit from [a] contract[] is estopped from seeking exclusion from provisions of the contract." *Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. Am. Boat Co., LLC*, No. 11 Civ. 6804, 2012 WL 527209, at *4 (S.D.N.Y. Feb. 17, 2012). Here, Plaintiff identified itself as "Kelly Aerospace" and received an 80% discount on shipping price—a direct benefit from the 2013 pricing agreements.

6

**B. Four-Step Limitation of Liability Test**

Having determined that the terms of the 2013 pricing agreements apply, the Court considers whether Defendant has carried its burden in showing that it satisfied all four requirements necessary to limit its liability under §14706(c)(1)(A). First, the documents sent by Defendant to Kelly Aerospace on January 28, 2013 noted "liability limitations in ABF 111 Series will be applicable to the pricing contained herein." (Dkt. 11-3; Dkt. 11-4.) In addition, an internet address for the full policies was provided. (*Id.*) The email accompanying the pricing agreements similarly stated:

> "Important information regarding these provisions and standard motor carrier industry pricing practices are found in the ABF Shipping Guide available at abf.com. We encourage you to read this guide for important information regarding ... bill of lading instructions, cargo loss and damage liability limitations and information on how your pricing provisions are applied. Both of the ABF 111 Rules Tariff and Shipping Guide are available, in their entirety on the ABF Resource Center."

(*Id.*) According to Defendant, the underlined portions of the emails were active links that would take the customer directly to the full text of the terms and conditions. (Dkt. 11, at 12.) The Court concludes that no reasonable jury could find that the first prong is not satisfied.[7]

With regard to the second and third prongs, Defendant has presented evidence that Plaintiff was provided both reasonable notice of options and opportunities to obtain the information about those options that would limit Defendant's liability. First, in exchange for deeply discounted shipping rates, the 2013 pricing agreements incorporated the standard

---

[7]Plaintiff's assertion that Bates never received a copy of the tariffs (*see, e.g.*, Dkt. 26-1), does not alter the Court's conclusion. Even if the 2013 communications were insufficient to satisfy the first prong, the amended statute requires only that Defendant provide copies of its rate, classification, rules, and practices *upon request* of the shipper. *OneBeacon*, 634 F.3d at 1100. Plaintiff does not claim to have requested this information prior to shipping its goods, nor to have been unable to access the information Defendant's website.

limitation of liability found in Series Tariff 111. (Dkt. 11-3; Dkt. 11-4.) Section 1 of Item 780-1 in the Series 111 tariff provides an opportunity to choose among various levels of liability. (Dkt. 11-7.) Moreover, for the 2014 shipment at issue, Plaintiff went on Defendant's website and filled in the data required to generate the bill of lading. (Dkt. 11, at 14; Dkt. 26-1, at ¶ 6.) The fact that Plaintiff filled out the bill of lading "is relevant in ascertaining whether [it] was offered, and agreed to, a limitation of liability by the carrier." *Exel*, 807 F.3d at 153. The rate quotations generated for Plaintiff clearly state that, unless otherwise outlined in the party's specific pricing agreements, "the liability limits as outlined in Item 780-1 of ABF 111 Series Rules and Special Service Charges" apply. (Dkt. 11-9; Dkt. 11-10.) Moreover, the bill of lading for the shipment at issue similarly instructed the shipper to "see Item 780-1 of ABF 111 rules for general liability limitations and for additional coverage available at additional expense." (Dkt. 11-8.)

District courts within this circuit have held that a bill of lading that "makes reference to a liability-limiting tariff provision" may be enforceable against the shipper. *Tenn. Wholesale Nursery v. Wilson Trucking Corp.*, No. 3:12-cv-00937, 2013 WL 5780124, at *4 (M.D. Tenn. Oct. 25, 2013). While more is required than merely stating "[f]reight moving under this bill of lading is subject to tariffs on file," *Toledo Ticket*, 133 F.3d at 443, here, the bill of lading explicitly points shippers to Item 780-1 of ABF 111 and explains that "additional coverage is available at an additional expense." (Dkt. 11-8.) The Court concludes that no reasonable jury could find Plaintiff was not presented with reasonable opportunities to obtain information about limitation of liability options. Plaintiff did not seek such information nor select any option other than the standard limitation of liability.

Finally, with regard to the fourth prong, Plaintiff does not dispute that the bill of lading was issued prior to transporting the shipper's goods.[8] (Dkt. 11-8.) The Court concludes there is no genuine issue of material fact precluding judgment on the issue of whether Defendant limited its liability for the shipment at issue, and the default of full liability therefore does not apply.

## IV. Conclusion

For the above-stated reasons, Defendant's motion for partial summary judgment is GRANTED and Plaintiff's motion for partial summary judgment is DENIED.

SO ORDERED.

        S/Nancy G. Edmunds
        Nancy G. Edmunds
        United States District Judge

Dated: June 9, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 9, 2016, by electronic and/or ordinary mail.

        S/Carol J. Bethel
        Case Manager

---

[8] While Plaintiff notes that the bill of lading was merely presented to (and signed by) "a worker," Plaintiff cites no law requiring more. Rather, the fourth prong requires only that a receipt or bill of lading is issued. *See Exel*, 807 F.3d at 150.